[Cite as *Burriss v. Burriss*, 2010-Ohio-6116.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY

PATRICIA A. BURRISS,                                    :
                                                        :
    Plaintiff-Appellee in 09CA21,                     :
    Appellant in 10CA11,                              :       Case Nos.: 09CA21 &
                                                        :                  10CA11
    v.                                                :
                                                        :       **DECISION AND**
AVERILL BURRISS, III.,                                  :       **JUDGMENT ENTRY**
                                                        :
    Defendant-Appellant in 09CA21,                    :
    Appellee in 10CA11.                               :       File-stamped date:  12-1-10

---

**APPEARANCES:**

Marty J. Stillpass, Proctorville, Ohio, for Appellant in 09CA21/Appellee in 10CA11.

Mark K. McCown, Ironton, Ohio, for Appellee in 09CA21/Appellant in 10CA11.

---

Kline, J.:

{¶1}   Averill Burriss, III., (hereinafter "Averill") appeals the judgment of the Lawrence County Court of Common Pleas, which granted Patricia A. Burriss (hereinafter "Patricia") a divorce from Averill.  On appeal in case number 09CA21, Averill contends that the trial court erred in finding that Patricia held a $75,000 non-marital interest in the marital residence.  Because two statutory provisions directly contradict Averill's arguments on the issue of separate-versus-marital property, we disagree.  Averill also contends that the trial court erred in its valuation of certain household goods.  Because Averill did not object to the magistrate's valuation of these items, he has forfeited all but a plain-error review of this issue.  And because of Averill's

own testimony at the trial court level, we cannot find plain error in this case.  Next,

Averill contends that the trial court erred in its valuation of the marital real property.

Because Averill invited any potential error, and because some competent, credible

evidence supports the trial court's valuation, we disagree.  Finally, Averill contends that

the trial court erred by ordering him to pay $24,173 to Patricia.  Because the payment

does not appear to balance the equities, but merely reverses the parties' respective

positions, we agree and find that the trial court abused its discretion by ordering the

$24,173 payment.

{¶2}    Patricia has also appealed the trial court's decision, but we will not

consider her assignments of error.  The trial court entered a final appealable order on

January 11, 2010.  For unclear reasons, the trial court sua sponte reconsidered its

judgment and entered a second "final appealable order" on February 11, 2010.

Accordingly, we must dismiss Patricia's appeal in case number 10CA11 for the following

reasons.  First, Patricia may not appeal from the trial court's February 11, 2010 order

because that order is a nullity.  And second, Patricia filed her notice of appeal more than

thirty days past the trial court's January 11, 2010 final appealable order.  As a result,

Patricia's appeal is untimely.

{¶3}    Accordingly, we (1) dismiss Patricia's appeal for lack of jurisdiction; (2)

affirm, in part, and reverse, in part, the January 11, 2010 judgment of the trial court; and

(3) remand this cause to the trial court for further proceedings consistent with this

opinion.

I.

{¶4}   Averill and Patricia were married in 1968.  On February 16, 2005, Patricia filed a complaint for divorce.  Among other items, Patricia requested a reasonable division of property.

{¶5}   During the marriage, Patricia inherited money, personal property, and real property from her father.  Sometime after receiving the inheritance, Patricia traded her inherited real property and $5,000 for real property on Highland Drive (hereinafter, we will refer to this property as "Highland Drive").  The parties dispute whether Highland Drive was Patricia's separate property or the couple's marital property.  Patricia testified that her inherited money was used in the trade for Highland Drive, but Averill testified that the $5,000 came from the couple's joint funds.  Moreover, as Averill notes, the deed to Highland Drive listed Averill and Patricia as the co-owners of that property.  Patricia, however, produced a written statement that Averill had signed in 1996.  The statement says (1) that the $5,000 *was* Patricia's inherited money; (2) that Averill was on the deed "solely as [a] survivor in case of [Patricia's] death"; and (3) that Highland Drive "was *not* a marital access [sic] that was accumulated during our marriage."  (Emphasis added.)

{¶6}   Sometime after trading for Highland Drive, Averill and Patricia purchased their marital residence, which consisted of two different lots.  The parties agreed that Averill's mother made the down payment on the marital residence.  Later, Highland Drive was sold for $94,250.  According to Patricia, she used $75,000 of the Highland Drive proceeds to pay back Averill's mother for making the down payment on the marital residence.  Patricia testified that the remaining $19,250 from the sale of Highland Drive was deposited into a joint bank account.  Averill claimed, however, that none of the proceeds from Highland Drive went directly to his mother.  Instead, Averill testified (1)

that he and Patricia used joint funds to repay the loan and (2) that *all* of the proceeds from the sale of Highland Drive were deposited into a joint bank account.

{¶7}   After Patricia filed her divorce complaint, the trial court allowed Averill to take some of his tools from the marital residence.  Sometime later, Averill claimed that these particular tools had been stolen from him.  Averill informed his insurance company that the tools were worth approximately $30,000, but the insurance company reimbursed Averill just $3,300 for the tools.

{¶8}   On March 6, 2009, the magistrate entered a decision on the various contested issues.  Both Averill and Patricia filed objections to the magistrate's decision. In particular, Averill made the following three objections: (1) the magistrate erred in granting Patricia a separate, non-marital interest in the marital real property; (2) the magistrate erred in not considering various expenses that Averill had paid during the pendency of the divorce; and (3) the magistrate erred in awarding Patricia the second lot of the marital real property.  After considering both parties' objections, the trial court issued a judgment entry on August 11, 2009.

{¶9}   Averill appealed from the August 11, 2009 order (case number 09CA21). But on December 7, 2009, Averill and Patricia filed a Joint Motion For Remand because they "believe[d] the judgment from which this appeal [was] taken [was] not a final appealable order."  As a result, we ordered a limited remand so that the trial court could address any final appealable order issues.  The trial court then issued a "Final Appealable Order" on January 11, 2010.

{¶10}  In relevant part, the January 11, 2010 order (1) values the stolen tools at $30,000; (2) awards both lots of the marital real property (i.e., the marital residence) to

Patricia; (3) values the marital real property at $260,000 – a valuation that includes both lots; and (4) finds that Patricia had a $75,000 non-marital interest (i.e., separate property) in the marital real property.  The trial court based the $75,000 non-marital interest on (1) Highland Drive being Patricia's separate property and (2) the proceeds from the sale of Highland Drive being used to repay Averill's mother for making the down payment.  Thus, in the award of the marital real property, Patricia "receiv[ed] an asset of $46,692.12 in value after subtraction of the mortgage balance and the $75,000 non-marital asset."  January 11, 2010 Order at 2.

{¶11}  The trial court also ordered that $31,673 of personal property be distributed to Averill and that $7,500 of personal property be distributed to Patricia.  To balance the equities of this distribution, the trial court ordered Averill to pay Patricia $24,173 in cash.

{¶12}  For unclear reasons, the trial court entered another "Final Appealable Order" on February 11, 2010.  (Averill claims that "[b]oth parties requested additional findings" after the January 11, 2010 order.  Brief on Behalf of Defendant-Appellant at 3.  Similarly, Patricia claims that the parties "requested a clarification from the court on its methodology of calculating its specific distributive award[.]"  Brief of Appellee at 1.  Nevertheless, the record contains no motions, filings, or formal statements from either Averill or Patricia between January 11, 2010 and February 11, 2010.  Because the record is silent, we must treat the February 11, 2010 order as a sua sponte reconsideration of the January 11, 2010 order.)  Patricia filed her notice of appeal on March 10, 2010 (case number 10CA11).  We then consolidated case numbers 09CA21 and 10CA11.

{¶13} Averill asserts the following assignments of error: I. "THE COURT BELOW ERRED IN HOLDING THAT THE PLAINTIFF-APPELLEE WAS ENTITLED TO A $75,000.00 NON-MARITAL CREDIT AGAINST THE MARITAL EQUITY IN THE JOINTLY OWNED REAL ESTATE." II. "THE COURT BELOW ERRED IN VALUING THE HOUSEHOLD GOODS RECEIVED BY THE DEFENDANT-APPELLANT AT $30,000.00." III. "THE COURT BELOW ERRED IN ORDERING THE DEFENDANT-APPELLANT TO PAY $24,173.00 TO THE PLAINTIFF-APPELLEE AS SET FORTH ON PAGE THREE PARAGRAPH TWO, OF THE AMENDED JUDGMENT ENTRY FILED ON FEBRUARY 11, 2010." And, IV. "THE COURT BELOW ERRED IN FINDING THE VALUE OF THE MARITAL RESIDENCE TO BE $260,00[0].00, THEREBY EXCLUDING THE VALUE OF THE ADJOINING LOT WHICH THE MAGISTRATE VALUED AT $22,000.00 AND WHICH VALUATION THE COURT OSTENSIBLY APPROVED."

{¶14} Patricia asserts the following three assignments of error: I. "The Court erred when it sua sponte reopened its final appealable order and filed an 'Amended Judgment Entry' altering its previous findings, when it lacked jurisdiction to do the same." II. "The Court's decision to grant a 'credit' to the Cross-Appellee of monies certain is not supported by competent, credible evidence, and is against the manifest weight of the evidence." And, III. "The Court's decision in its January 11, 2010 Final Appealable Order incorrectly set forth the amount of the Cross-Appellant's interest in her spouse's 401(K)."

II.

{¶15} Initially, we must address the propriety of the trial court's February 11, 2010 order. "[A]fter a trial court issues a final, appealable order, a motion for reconsideration of that final order is a nullity, and any judgment entered on such a motion is also a nullity." *Napier v. Napier*, 182 Ohio App.3d 672, 2009-Ohio-3111, at ¶7, citing *Pitts v. Ohio Dept. of Transp.* (1981), 67 Ohio St.2d 378, 379; *Kauder v. Kauder* (1974), 38 Ohio St.2d 265, 267. "A trial court's sua sponte reconsideration of a final judgment is no different from a party moving for reconsideration." *Napier* at ¶7. Here, the trial court sua sponte reconsidered its January 11, 2010 order. Therefore, because the January 11, 2010 order was final and appealable, the trial court's February 11, 2010 order is a nullity.

A.

{¶16} We also must address whether we have jurisdiction to consider Patricia's appeal in case number 10CA11. Here, we do not have jurisdiction for two reasons. First, "a party may not appeal from a judgment that is a nullity." *McLaughlin v. McLaughlin*, Athens App. No. 09CA28, 2010-Ohio-694, at ¶20 (Kline, J., with one judge concurring in judgment only). See, also, *Crooksville v. Love*, Perry App. No. 09-CA-7, 2009-Ohio-6939, at ¶23; *State v. Keith*, Lorain App. No. 08CA009362, 2009-Ohio-76, at ¶8; *Moffit v. Auberle*, Lucas App. No. L-08-1078, 2008-Ohio-4282, at ¶13; *Barnhisel v. Barnhisel*, Wood App. No. WD-06-024, 2007-Ohio-446, at ¶17-18. And second, "App.R. 4(A) requires a party to file a notice of appeal 'within thirty days of the later of entry of the judgment or order appealed or, in a civil case, service of the notice of judgment and its entry if service is not made on the party within the three day period in Rule 58(B) of the Ohio Rules of Civil Procedure.' If a party fails to file a notice of appeal within thirty

days as required by App.R. 4(A), we do not have jurisdiction to entertain the appeal. The timely filing of a notice of appeal under this rule is a jurisdictional prerequisite to our review." *Hughes v. A & A Auto Sales, Inc.*, Lawrence App. No. 08CA35, 2009-Ohio-2278, at ¶7, quoting App.R. 4(A). See, also, *Marcinko v. Carson*, Pike App. No. 04CA723, 2004-Ohio-3850, at ¶15; *State v. Thacker*, Lawrence App. No. 02CA35, 2002-Ohio-7443, at ¶2-3.

{¶17} Patricia filed her notice of appeal on March 10, 2010, which would have been timely if Patricia was appealing from the February 11, 2010 order. However, Patricia may not appeal from the February 11, 2010 order because that order is a nullity. Here, if Patricia wanted to appeal the trial court's judgment, she should have filed an appeal within thirty days of the January 11, 2010 order. Because Patricia failed to do so, her appeal is untimely.

{¶18} Therefore, we lack jurisdiction to consider Patricia's appeal because (1) she may not appeal from the trial court's February 11, 2010 order, and (2) Patricia filed her notice of appeal more than thirty days past the trial court's January 11, 2010 final appealable order. See *McLaughlin* at ¶21-23 (Kline, J., with one judge concurring in judgment only); *Crooksville* at ¶23-24.

{¶19} Accordingly, we dismiss Patricia's appeal for lack of jurisdiction.

B.

{¶20} Averill's four assignments of error address issues that are the same in both the January 11, 2010 order and the February 11, 2010 order. Therefore, we will consider Averill's assignments of error only in relation to the January 11, 2010 order,

which is the final appealable order in this case. Again, we stress that the February 11, 2010 order is a nullity.

III.

{¶21} In his first assignment of error, Averill contends that the trial court erred in finding that Patricia held a $75,000 non-marital interest in the marital real property. The trial court traced the $75,000 non-marital interest through Highland Drive and, from there, back to Patricia's inherited home and her inherited $5,000. Averill, however, argues that the trial court erred by tracing Patricia's non-marital interest through Highland Drive. First, Averill claims that Highland Drive was marital property because the deed to Highland Drive named Averill and Patricia as the co-owners of that property. And second, Averill argues that Highland Drive was marital property because funds from the sale of Highland Drive were deposited into a joint bank account. For these reasons, Averill argues that Patricia "evidenced no interest in maintaining either [Highland Drive] itself or the funds realized from its sale as non-marital property." Brief on Behalf of Defendant-Appellant at 6.

{¶22} Under R.C. 3105.171(B), the trial court must determine what constitutes marital property and what constitutes separate property. Averill's arguments require us to interpret and apply R.C. 3105.171(H) and R.C. 3105.171(A)(6)(b) – two statutory provisions related to the marital-or-separate determination. "When interpreting statutes and their application, an appellate court conducts a *de novo* review, without deference to the trial court's determination." *Roberts v. Bolin*, Athens App. No. 09CA44, 2010-Ohio-3783, at ¶20, quoting *State v. Sufronko* (1995), 105 Ohio App.3d 504, 506.

**{¶23}** Here, we find that Averill's arguments are without merit. Generally, "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H). Thus, despite Averill's argument to the contrary, the language of the deed does not control whether Highland Drive was marital property or separate property. Furthermore, "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). As a result, depositing funds from the sale of Highland Drive into a joint bank account does not, by itself, determine whether those funds were marital property or separate property.

**{¶24}** Averill bases his *entire* argument on (1) the language of the Highland Drive deed and (2) funds from the sale of Highland Drive being deposited into a joint bank account. For these reasons, *and these reasons alone*, Averill contends that Highland Drive was marital property. However, based on a clear and unambiguous reading of R.C. 3105.171(H) and R.C. 3105.171(A)(6)(b), Averill's arguments must fail.

**{¶25}** Accordingly, we overrule Averill's first assignment of error.

IV.

**{¶26}** In his second assignment of error, Averill essentially contends that the trial court erred in valuing the stolen tools at $30,000. Averill argues that, based on the amount of reimbursement paid by the insurance company, the trial court should have valued the stolen tools at $3,300.

**{¶27}** Before a trial court can distribute property, the court must value that property. Indeed, a trial court must place a monetary value on every contested asset of the parties in a divorce proceeding. *Knight v. Knight* (Apr. 12, 2000), Washington App. No. 99CA27, citing *Pawlowski v. Pawlowski* (1992), 83 Ohio App.3d 794, 799; *Goode v. Goode* (1991), 70 Ohio App.3d 125, 132. Because the valuation of a specific asset in a divorce case is a question of fact, we review a trial court's valuation under the manifest-weight-of-the-evidence standard. See *Covert v. Covert*, Adams App. No. 03CA778, 2004-Ohio-3534, at ¶6, citing *Brown v. Brown*, Pike App. No. 02CA689, 2003-Ohio-304, at ¶13. Consequently, we will not reverse the trial court as long as some competent, credible evidence supports the trial court's valuation. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, syllabus. "This standard of review is highly deferential and even 'some' evidence is sufficient to sustain the judgment and prevent a reversal." *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159.

**{¶28}** Patricia notes that Averill did not object to the magistrate's $30,000 valuation. For that reason, Patricia argues that Averill has forfeited his second assignment of error except for a plain-error review. See, generally, *Kiewel v. Kiewel*, Medina App. No. 09CA0075-M, 2010-Ohio-2945, at ¶17 (discussing the difference between waiver and forfeiture). We agree. Civ.R. 53(D)(3)(b)(ii) provides that "[a]n objection to a magistrate's decision shall be specific and state with particularity all grounds for objection." Furthermore, "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law * * *, *unless the party has objected to that finding or conclusion* as required by Civ.R.

53(D)(3)(b)." Civ.R. 53(D)(3)(b)(iv) (emphasis added). Although he filed three objections to the magistrate's decision, Averill did not object to the specific finding "that the total value of all items previously distributed [to Averill] was approximately $30,000.00." Magistrate's Decision at 3. Therefore, except for plain error, Averill has indeed forfeited his right to appeal the trial court's adoption of this particular finding. See, e.g., *Chalker v. Steiner*, Mahoning App. No. 08 MA 137, 2009-Ohio-6533, at ¶40 ("[P]ursuant to Civ.R. 53, Appellant has waived all but plain error of his [particular] argument by failing to raise it in his objections to the magistrate's decision.").

**{¶29}** "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, syllabus, 1997-Ohio-401. Here, we cannot find plain error because Averill told the insurance company that the tools were worth approximately $30,000.

**{¶30}** "COURT: Back to the tools. The insurance company paid you thirty three hundred, you had told them you had thirty thousand?

**{¶31}** "A. Yes." Transcript at 77.

**{¶32}** Regardless of the amount Averill received from the insurance company, we cannot find plain error in this situation. Because Averill himself valued the tools at $30,000, we cannot say that the trial court's finding affects the basic fairness, integrity, or public reputation of the judicial process. And even under the manifest-weight-of-the-

evidence standard, Averill's own testimony would constitute enough competent, credible evidence to support the trial court's finding.

{¶33}  Accordingly, we overrule Averill's second assignment of error.

V.

{¶34}  We will examine Averill's fourth assignment of error out of order.  In his fourth assignment of error, Averill contends that the trial court erred in valuing the marital real property at $260,000.  Averill claims that the residential lot is worth $260,000 and that the adjoining lot is worth approximately $22,000.  As such, Averill argues that the trial court should have valued the marital real property at $282,000.

{¶35}  Patricia contends that Averill has also forfeited his fourth assignment of error except for a plain-error review.  It is undisputed that Averill did not object to the magistrate's valuation of the marital real property.  But for the forfeiture rule to apply, a trial court must adopt a particular finding of the magistrate.  See Civ.R. 53(D)(3)(b)(iv).  And in our view, it is unclear whether the trial court actually adopted the magistrate's valuation of the marital real property.  Here, the magistrate found that "[t]he parties are the owners of real property worth approximately $260,000.00, an adjoining lot worth approximately $22,200.00, and personal property[.]"  Magistrate's Decision at 1.  Because the magistrate used the all-encompassing term "real property" – as opposed to a limiting term such as "residential lot" – it is possible that the magistrate included the adjoining lot in the $260,000 valuation.  However, because the magistrate listed the $260,000 valuation separately from the $22,200 valuation, it is also reasonable to conclude that the magistrate valued the real property at a combined total of $282,200.  Thus, it is unclear whether the trial court adopted the magistrate's valuation of the real

property. And as a result, we cannot say for certain that Civ.R. 53(D)(3)(b)(iv) applies to Averill's fourth assignment of error. Therefore, we will review the valuation of the real property under the manifest-weight-of-the-evidence standard. See Section IV, supra; *Knight*; *Covert* at ¶6.

**{¶36}** Here, we find no merit in Averill's fourth assignment of error. At the trial court level, Averill himself argued that the marital residence was valued at $260,000 – a valuation that included both the residential lot and the adjoining lot. In his Memorandum in Support of Defendant's Objections to Magistrate's Decision, Averill urged the trial court to adopt his Proposed Findings of Fact and Conclusions of Law. Averill's fifth proposed finding is that "[t]he parties are owners of certain real property having an approximate value of Two Hundred Sixty Thousand Dollars ($260,000.00) *which includes the extra lot.*" Proposed Findings of Fact and Conclusions of Law at 1 (emphasis added). As a result, Averill may not complain of a valuation that he invited at the trial court level. See, e.g., *Soulsby v. Soulsby*, Meigs App. No. 07CA1, 2008-Ohio-1019, at ¶22 (stating that an appellant "cannot take advantage of error which [the appellant] induced"). Furthermore, Patricia submitted evidence that the marital residence, including the adjoining lot, was valued at $260,000. Thus, we find that some competent, credible evidence supports the trial court's finding under the manifest-weight-of-the-evidence standard.

**{¶37}** Accordingly, we overrule Averill's fourth assignment of error.

VI.

**{¶38}** In his third assignment of error, Averill contends that the trial court erred by ordering him to pay Patricia $24,173. Averill received $31,673 worth of personal

property, and Patricia received $7,500 worth of personal property. As a result, the trial

court ordered the $24,173 payment to "balance the remaining equities, just itemized."

January 11, 2010 Order at 3. However, Averill argues that "the correct amount payable

to [Patricia] to balance the remaining equities [is] $12,086.50." Brief on Behalf of

Defendant-Appellant at 8.

**{¶39}** "Trial courts must divide marital property equitably between the spouses.

R.C. 3105.171(B). In most cases, this requires that marital property be divided equally.

Id. at (C)(1). However, if the trial court determines that an equal division would produce

an inequitable result, it must divide the property in a way it deems equitable. Id.

Because the trial court possesses great discretion in reaching an equitable distribution,

we will not reverse its ultimate division of property absent an abuse of discretion."

*O'Rourke v. O'Rourke*, Scioto App. No. 08CA3253, 2010-Ohio-1243, at ¶15 (other

citations omitted). An abuse of discretion connotes more than a mere error of judgment;

it implies that the court's attitude is arbitrary, unreasonable, or unconscionable.

*Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219.

**{¶40}** Averill's third assignment of error has merit. A trial court "must indicate

the basis for its award in sufficient detail to enable a reviewing court to determine that

the award is fair, equitable, and in accordance with the law." *Didick v. Didick*, Carroll

App. No. 01APO760, 2002-Ohio-5182, at ¶17, citing *Kaechele v. Kaechele* (1988), 35

Ohio St.3d 93, 97. See, also, *O'Rourke* at ¶16. And here, a mathematical error is the

only apparent basis for the $24,173 payment. The trial court ordered that Averill receive

$31,673 worth of personal property and that Patricia receive $7,500 worth of personal

property. To reach an equitable distribution, the trial court ordered Averill to pay

$24,173 to Patricia.  Apparently, the trial court subtracted $7,500 from $31,673 to arrive at the $24,173 figure ($31,673 - $7,500 = $24,173).  However, the trial court's solution to equalizing the distribution – Averill paying $24,173 to Patricia – does not appear to balance the equities.  Instead, the trial court has merely reversed the parties' respective positions.  After paying $24,173 to Patricia, Averill will end up at $7,500, and Patricia will end up at $31,673.  Without further explanation, we cannot say that the trial court reached its intended result by ordering the $24,173 payment.

{¶41} Based on the trial court's stated intention, a $12,086.50 payment would appear to balance the equities.  But on remand, the trial court is not required to order a $12,086.50 payment.  Instead, the trial court may order whatever payment it deems equitable based on the *entire distribution of property in the January 11, 2010 order*. (Again, the February 11, 2010 order is a nullity, and the trial court may not base the payment on the distribution of property in the February 11, 2010 order.)  The trial court must, however, explain the basis for its order in sufficient detail to ensure that the payment is fair and equitable.

{¶42} Accordingly, we sustain Averill's third assignment of error.  We agree that the trial court abused its discretion by ordering the $24,173 payment in an effort to balance the equities.  The payment does not appear to balance the equities; it merely reverses the parties' respective positions.

VII.

{¶43} In conclusion, the trial court's February 11, 2010 order is a nullity, and we lack jurisdiction to consider Patricia's appeal.  After considering Averill's assignments of error in relation to the January 11, 2010 order, we find the following: (1) the trial court

did not err in finding that Patricia had a $75,000 non-marital interest in the marital residence; (2) the trial court did not err in valuing the stolen tools at $30,000; and (3) the trial court did not err in valuing the marital real estate at $260,000.  However, Averill's $24,173 payment to Patricia does not appear to "balance the remaining equities" as the trial court intended.  Rather, the $24,173 payment merely reverses the parties' respective positions.  Therefore, ordering the payment was an abuse of discretion.  For these reasons, we affirm, in part, and reverse, in part, the January 11, 2010 judgment of the trial court.  We remand this cause to the trial court for further proceedings consistent with this opinion.

**JUDGMENT AFFIRMED, IN PART, REVERSED, IN PART, AND CAUSE REMANDED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED, IN PART, REVERSED, IN PART, AND THIS CAUSE BE REMANDED to the trial court for further proceedings. Appellant and Appellee shall pay equally the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Harsha, J.:  Concurs in Judgment and Opinion
Abele, J.:  Concurs in Judgment Only.

For the Court

BY:_____
Roger L. Kline, Judge

**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**